Clarence HERRING

v.

The ELMER LINE LIMITED.

Civ. A. No. 81–4287.

United States District Court,
E.D. Louisiana.

Jan. 13, 1984.

Joseph M. Bruno, Bruno & Bruno, New Orleans, La., for plaintiff.

C. Gordon Starling, Jr., Gelpi, Sullivan, Carroll & Laborde, New Orleans, La., Michael P. Mentz, Hailey, McNamara, McNamara & Hall, Metairie, La., for defendant.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

MENTZ, District Judge.

This case, a third party action against the vessel owner, was tried on December 8, 1983, as to liability only.

The plaintiff, age 52 at the time of injury, was employed by Strachan Shipping Company as a longshoreman, at the time of the accident, October 27, 1980. For approximately three or four years prior thereto, he had worked as a derrickman, whose duties were to flag the wincher, and to watch out for the men in the hold, and on the wharf, as the wincher would operate the crane. On October 27, 1980, at about 8:00 a.m., the plaintiff and his crew boarded the M/V RIO CALLINGSTA to aid in the discharge of cargo from holds 5 and 2, and at 10:00 a.m., the crew moved to hold No. 2, where the plaintiff assisted the winch operator, Charles Green. At this time, plaintiff Herring noticed that there was considerable dunnage strewn across the deck, between hold No. 2 and the side of the ship next to the wharf. However, he was able to move through the dunnage, and attach the "save-all net" in three places to the side of the ship, and return to his station. Shortly after noon, when hold No. 2 had been discharged, Mr. Herring proceeded to unhook the "save-all net" in two places, but when moving to unhook the net in the third place, slipped and fell, causing the injuries complained of in this action. Plaintiff alleges the accident was caused by tripping on the dunnage or a cable.

The American Mutual Liability Insurance Company, as workmen's compensation insurer of Strachan Shipping Company, paid compensation benefits of $70,814.40, together with medical benefits of $13,877.81, and intervenes in this matter to recover these payments.

After hearing the testimony of Edwin Jones, Sr., the plaintiff's foreman, Charles J. Green, Sr., the winch operator, John Kern, the expert witness, and Mr. Falk, Safety Director of Strachan Shipping Company, as well as the plaintiff, the Court makes the following findings of fact:

1.

Mr. Falk, the safety director for the stevedore Strachan Shipping Co., boarded

the vessel shortly before the unloading began (at 8:00 a.m.) and did not note any hazardous conditions on the deck of the vessel. His written report only made note of a couple of the crew-men who did not have the proper safety hat. All of the witnesses stated that, on foreign vessels, it is the usual practice to leave dunnage on deck, pushed close to the edge of the ship. After Mr. Falk's inspection the Strachan stevedore crew moved onto the vessel.

2.

There was a clear path, of about three feet wide, from the gangway to hold No. 5, and no problems were encountered. Due to the fact that there were several containers between hatch No. 4 and the edge of the ship, it was necessary for Mr. Herring and his winch man to move to hold No. 2 by walking along a large pipe which ran along the bulwark of the ship. Neither the wincher nor Mr. Herring complained about the alleged dunnage which was strewn between the bulwark and hatch No. 2. The foreman did not inspect the area where Mr. Herring was working, as he believed Mr. Herring would check this out. The foreman stated that he would try to correct any dangerous condition such as the position of lashing wire or dunnage, by moving it next to the bulwark. Next to the foreman, the plaintiff would have been in charge of making sure that the area was clear. The foreman stated that if he had viewed the dunnage and believed that it would interfere with his work, he would have put it on the wharf.

3.

Mr. Green, the winch operator, was present when the plaintiff was injured, and he confirmed that there was substantial dunnage, cables, etc. in the area next to hatch No. 2. As a result, he went to his winch on the aft side of hold No. 2. After hatch No. 2 was unloaded, Mr. Green and the plaintiff were making their way through the debris, when suddenly plaintiff went down on his knee.

1. *Scindia Steam Navigation Co. v. DeLosSantos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1

4.

Neither Mr. Green nor the plaintiff complained about the condition of the dunnage, or reported it. Mr. Herring stated that he did not complain because he felt it would brand him as a troublemaker, and further stated that those who make complaints end up getting no work. On the contrary, Mr. Falk stated the company welcomed any complaint relating to safety.

CONCLUSIONS OF LAW

I.

The Court has jurisdiction of this matter under diversity of citizenship and the Foreign Sovereign Immunities Act, 28 U.S. Code 1330.

II.

In the case of *Helaire v. Mobil Oil Company,* 709 F.2d 1031 (5th Cir.1983), the court stated at page 1038:

Utilizing the Scindia [1] standards, however, that owner would not be liable for injuries caused by a fall on the steps unless (1) he was actually aware that the steps were icy, and (2) he knew that the invitee would do nothing to protect himself (or his employees) from danger

Continuing on the same page of the *Helaire* decision, the court stated:

Once loading operations have begun, the vessel owner can be held liable for injuries to employees of the stevedore resulting from open and obvious dangers only in the event of actual knowledge of the danger and actual knowledge that he cannot rely on the stevedore to remedy the situation.

In the court's "Conclusion" at page 1043 the court added:

Prior to the decision of the United States Supreme Court in *Scindia Steam Navigation Co. v. DeLosSantos* [451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1] this circuit held a vessel owner liable under

(1981).

33 U.S.Code § 905(b) for injuries to a longshoreman from open and obvious dangers if the owner knew, or if he should reasonably have foreseen, the dangerousness of the condition. *Scindia* makes clear, however, that liability in such cases can be imposed only if the owner has actual knowledge of the dangerous condition as well as actual knowledge that the stevedore is not acting to protect the longshoreman.[2]

### III.

As the Fifth Circuit stated in *Stass v. American Commercial Lines, Inc.,*[3] at page 882, as follows:

> However, the shipowner is entitled to rely on the stevedore's judgment only until the shipowner becomes aware of a hazard on the ship and that the stevedore is unreasonably failing to protect the longshoreman against that hazard, at which time it has a "duty to intervene" and remedy the hazard.

In the instant case, the stevedore's safety director had inspected the deck prior to the discharge operation, and did not find any dangerous conditions, although it is apparent that the dunnage complained of between hatch No. 2 and the bulwark must have been present at the time of the inspection. The evidence fails to show whether during the discharge operation, the vessel owner at any time became aware of the alleged dangerous condition. Plaintiff argues that the condition existed prior to the stevedore's entry onto the vessel, and this constituted "actual notice." However, the vessel was accepted by Mr. Falk on behalf of the stevedore, before 8:00 a.m., and the Court believes that any further notice would have to be made after the inspection. Nor is there evidence that the stevedore was not fulfilling his general housekeeping duties such as to require intervention of the vessel owner. In addition, neither Mr. Herring nor the winch man, both of whom were aware of the dunnage, made any complaint regarding this condition, or requested the foreman to have same removed.

For the above reasons, Plaintiff's claim is rejected.

---

**2.** Footnote 12 at page 1039 of *Helaire* reads as follows:

> The opinion in *Scindia* recognized that the owner's actual knowledge of a dangerous condition which later injured a longshoreman would not in itself make him negligent. It might well be "reasonable" for the owner to rely on the stevedore's judgment that the condition, though dangerous, was safe enough. 101 S.Ct. at 1626.

